KEVIN M. LOEW, ESQ., CA Bar No. 238080
kloew@waterskraus.com
ANDREW SEITZ, ESQ., CA Bar No. 273165
aseitz@waterskraus.com
WATERS, KRAUS & PAUL
222 N. Sepulveda Blvd., Suite 1900
El Segundo, CA 90245
310-414-8146 Telephone
310-414-8156 Facsimile

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **JIMMIE LEE LYONS**, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR PERSONAL INJURY – ASBESTOS (NEGLIGENCE; STRICT PRODUCTS LIABILITY; FALSE REPRESENTATION; INTENTIONAL TORT/INTENTIONAL FAILURE TO WARN/CONCEALMENT); DEMAND FOR JURY TRIAL** |
| **A.W. CHESTERTON COMPANY**; **AIR & LIQUID SYSTEMS CORPORATION** (*sued individually and as successor-by-merger to* BUFFALO PUMPS, INC.); **CBS CORPORATION** (*f/k/a* VIACOM, INC., *successor by merger with* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION *and as successor-in-interest to* BF STURTEVANT); **CERTAINTEED CORPORATION;** **CRANE CO**.; **FMC CORPORATION** (*sued individually* | |

*and as successor-in-interest to* PEERLESS PUMP CO.);
**GENERAL ELECTRIC COMPANY**;
**HENRY COMPANY LLC**;
**INDIAN HEAD INDUSTRIES, INC**.;
**INGERSOLL-RAND COMPANY**;
**ITT CORPORATION** *f/k/a* ITT INDUSTRIES, INC. (*sued individually and as successor-in-interest to* BELL & GOSSETT PUMP CO.);
**METALCLAD INSULATION LLC** (*sued individually and as successor-by-merger to* METALCLAD INSULATION CORPORATION);
**PARKER-HANNIFIN CORPORATION** (*sued individually and as successor-in-interest to* SACOMA-SIERRA, INC.);
**STERLING FLUID SYSTEMS (USA), LLC** (*f/k/a* PEERLESS PUMP COMPANY);
**SYD CARPENTER, MARINE CONTRACTOR, INC.**;
**THE W.W. HENRY COMPANY, L.P.** *f/k/a* THE W.W. HENRY COMPANY and HENRY ASPHALT COMPANY;
**THOMAS DEE ENGINEERING CO., INC.**;
**TRIPLE A MACHINE SHOP, INC**.;
**UNION CARBIDE CORPORATION**; and **DOES 1-450 INCLUSIVE**,

                    Defendants.

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

Plaintiff JIMMIE LEE LYONS, by and through his attorneys, hereby alleges as follows:

## JURISDICTION AND VENUE

1.   This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

2.   Venue is proper under 28 U.S.C. § 1391 in the Central District of California because a substantial part of the actions or omissions giving rise to this case occurred within this district.

## PARTIES

3.   Plaintiff in this action, JIMMIE LEE LYONS, is a resident of the state of Arkansas.

4.   Plaintiff JIMMIE LEE LYONS sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products, including at Plaintiff's worksites.

5.   The pathogenesis of Plaintiff JIMMIE LEE LYONS' asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

6.   All of Plaintiff's claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants, and/or the supplied to, installed and/or maintained by defendants at Plaintiff JIMMIE LEE LYONS' worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff JIMMIE LEE LYONS, resulting in cumulative, progressive, incurable lung diseases.

7.   Plaintiff JIMMIE LEE LYONS claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were

intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

8.     As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff JIMMIE LEE LYONS.

9.     Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of Los Angeles, State of California.

10.     Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| **A.W. CHESTERTON COMPANY** | Massachusetts; Massachusetts |
| **AIR & LIQUID SYSTEMS CORPORATION** (*sued individually and as successor-by-merger to* BUFFALO PUMPS, INC.) | Pennsylvania; Pennsylvania |
| **CBS CORPORATION** (*f/k/a* VIACOM, INC., *successor by merger with* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION *and as successor-in-interest to* BF STURTEVANT) | Delaware; New York |
| **CERTAINTEED CORPORATION** | Delaware; Pennsylvania |
| **CRANE CO**. | Delaware; Connecticut |
| **FMC CORPORATION** (*sued individually and as successor-in-interest to* PEERLESS PUMP CO.) | Delaware; Pennsylvania |
| **GENERAL ELECTRIC COMPANY** | New York; Massachusetts |

4

| DEFENDANT | STATE |
|---|---|
| **HENRY COMPANY LLC** | California; California |
| **INDIAN HEAD INDUSTRIES, INC**. | Delaware; North Carolina |
| **INGERSOLL-RAND COMPANY** | New Jersey; North Carolina |
| **ITT CORPORATION** *f/k/a* ITT INDUSTRIES, INC. (*sued individually and as successor-in- interest to* BELL & GOSSETT PUMP CO.) | Indiana; New York |
| **METALCLAD INSULATION LLC** (*sued individually and as successor-by-merger to* METALCLAD INSULATION CORPORATION) | Delaware; Minnesota |
| **PARKER-HANNIFIN CORPORATION** (*sued individually and as successor-in-interest to* SACOMA-SIERRA, INC.) | Ohio; Ohio |
| **STERLING FLUID SYSTEMS (USA), LLC** (*f/k/a* PEERLESS PUMP COMPANY) | Delaware; Indiana |
| **SYD CARPENTER, MARINE CONTRACTOR, INC.** | California; California |
| **THE W.W. HENRY COMPANY, L.P.** *f/k/a* THE W.W. HENRY COMPANY and HENRY ASPHALT COMPANY | California; California |
| **THOMAS DEE ENGINEERING CO., INC**. | California; California |
| **TRIPLE A MACHINE SHOP, INC**. | California; California |
| **UNION CARBIDE CORPORATION** | New York; Michigan |

## FIRST CAUSE OF ACTION

### (NEGLIGENCE)

11.    At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, failing to retrofit, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, failed to retrofit, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY.

12.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing,

fabricating, designing, modifying, failing to retrofit, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

13.    In part, and without limitation as to other defendants, defendants METALCLAD INSULATION LLC (*sued individually and as successor-by-merger to* METALCLAD INSULATION CORPORATION); SYD CARPENTER, MARINE CONTRACTOR, INC.; THOMAS DEE ENGINEERING CO., INC.; and TRIPLE A MACHINE SHOP, INC., manufactured, modified, failed to retrofit, serviced and/or repaired asbestos-containing ships and vessels.

14.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, failed to retrofit, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Plaintiff herein (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons."

15.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

each of them, breached said duty of due care.

16.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

17.     Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in Exhibit A, attached to Plaintiff's complaint and incorporated by reference herein.

18.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiff as set forth in Exhibit A, attached to Plaintiff's complaint and incorporated by reference herein.

19.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from

exposure to asbestos and asbestos-containing products over a period of time.

20.     Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

21.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

22.     As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

23.     As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

24.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

25.     Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in,

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

26.    The herein-described conduct of said defendants listed in this paragraph below, their ALTERNATE ENTITIES, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons."  Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof against all defendants and their "alternate entities."

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Strict Products Liability)

27.    Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each of the preceding paragraphs.

28.    Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

29.    Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.  The defect existed in the said products at the time they left the possession of defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

30.    "Exposed persons" did not know of the substantial danger of using said

products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

31. In researching, manufacturing, fabricating, designing, modifying, failing to retrofit, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

32. On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

33.   With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, fail to retrofit, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

34.   The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, failure to retrofit, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed

thereto, including Plaintiff.

35.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

36.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, failed to retrofit, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

37.    Plaintiff relied upon defendants', their "alternate entities'", and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has been injured permanently as alleged herein.

38.    As a direct and proximate result of the actions and conduct outlined herein, Plaintiff has suffered the injuries and damages previously alleged.

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (False Representation)

39.    Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each of the preceding paragraphs.

40.    At the aforementioned time when Defendants, their ALTERNATE

ENTITIES, and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their ALTERNATE ENTITIES, and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons", including, without limitation, Plaintiff JIMMIE LEE LYONS and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

41.    The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons", including, without limitation, Plaintiff JIMMIE LEE LYONS, and his employers, relied upon said representations of Defendants, their ALTERNATE ENTITIES, and each of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

42.    Said representation by Defendants, their ALTERNATE ENTITIES, and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their ALTERNATE ENTITIES, and each of them, in that asbestos and asbestos-containing products and equipment have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons", thereby threatening the health and life of said persons, including Plaintiff JIMMIE LEE LYONS herein.

43.    As a direct and proximate result of said false representations by Defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff sustained the injuries and

damages alleged herein.

WHEREFORE, Plaintiff prays for judgment against Defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Intentional Tort / Intentional Failure to Warn / Concealment)

44.     Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each of the preceding paragraphs.

45.     At all times pertinent hereto, the Defendants, their ALTERNATE ENTITIES, and each of them, owed Plaintiff a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property, or rights of the Plaintiff.   When a duty to act was imposed, as set forth herein, the Defendants, their ALTERNATE ENTITIES, and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the Plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State of California and, more specifically, included suggestions of fact which were not true and which Defendants, their ALTERNATE ENTITIES, and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their ALTERNATE ENTITIES, and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of rights of the Plaintiff as provided for in the aforementioned Civil Code sections.

46.     Since on or before 1930, the Defendants, their ALTERNATE ENTITIES, and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products and equipment referred to in Plaintiff's First Cause of Action were and are

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

hazardous to the health and safety of Plaintiff, and others in Plaintiff JIMMIE LEE LYONS's position working in close proximity with such materials.   The Defendants, their ALTERNATE ENTITIES, and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time. With intent to deceive Plaintiff JIMMIE LEE LYONS, and others in Plaintiff's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)      Defendants, their ALTERNATE ENTITIES, and each of them, did not label any of the aforementioned asbestos-containing materials, products, and equipment regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their ALTERNATE ENTITIES, and each of them, since on or before 1930.  By not labeling such materials, products, and equipment as to their said hazards, Defendants, their ALTERNATE ENTITIES, and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff JIMMIE LEE LYONS to work in close proximity to such materials, when in fact it was not true; and Defendants, their ALTERNATE ENTITIES, and each of them, did not believe it to be true;

(b)      Defendants, their ALTERNATE ENTITIES, and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their ALTERNATE ENTITIES, and each of them, were bound to disclose such information;

(c)     Defendants, their ALTERNATE ENTITIES, and each of them, sold the aforementioned products, materials, and equipment to Plaintiff JIMMIE LEE LYONS's employers, the employers of Plaintiff's, and others without advising Plaintiff JIMMIE LEE LYONS, his employer, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their ALTERNATE ENTITIES, and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein.   By said conduct, Defendants, their ALTERNATE ENTITIES, and each of them, caused to be positively asserted to Plaintiff JIMMIE LEE LYONS that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiff JIMMIE LEE LYONS to work in close proximity to such materials;

(d)     Defendants, their ALTERNATE ENTITIES, and each of them, suppressed from Plaintiff's medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report." Although bound to disclose it, Defendants, their ALTERNATE ENTITIES, and each of them, influenced A. J. Lanza, M.D. to change his report, the altered version of which was published in Public Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.   Defendants, their ALTERNATE ENTITIES, and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)     Defendants, their ALTERNATE ENTITIES, and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute Industrial Hygiene Foundation and other industry organizations which, for and on behalf of Defendants, their ALTERNATE ENTITIES, and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff JIMMIE LEE LYONS by the suggestions and deceptions set forth above in this cause of action.   The Dust Control Committee, which changed its name

to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their ALTERNATE ENTITIES, and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their ALTERNATE ENTITIES, and each of them, herein.  Between 1942 and 1950, the Defendants, their ALTERNATE ENTITIES, and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff.  Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff JIMMIE LEE LYONS the true facts concerning such knowledge of danger, which Defendants, their ALTERNATE ENTITIES, and each of them, were bound to disclose;

(g)     Defendants, their ALTERNATE ENTITIES, and each of them, failed to warn Plaintiff JIMMIE LEE LYONS, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their ALTERNATE ENTITIES, and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants, their ALTERNATE ENTITIES, and each of them, failed to provide Plaintiff JIMMIE LEE LYONS with information concerning adequate protective

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

masks and other equipment devised to be used when applying and installing the products of the Defendants, their ALTERNATE ENTITIES, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff JIMMIE LEE LYONS and others applying and installing such material;

(i)     Defendants, their ALTERNATE ENTITIES, and each of them, when under a duty to so disclose, concealed from Plaintiff JIMMIE LEE LYONS the true nature of the industrial exposure of Plaintiff JIMMIE LEE LYONS and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer.   Defendants, their ALTERNATE ENTITIES, and each of them, also concealed from Plaintiff JIMMIE LEE LYONS and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants, their ALTERNATE ENTITIES, and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff JIMMIE LEE LYONS so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their ALTERNATE ENTITIES, and each of them, were under a duty to so inform and said failure was misleading; and

(k)     Defendants, their ALTERNATE ENTITIES, and each of them, failed to provide adequate information to physicians and surgeons retained by Plaintiff JIMMIE LEE LYONS's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff JIMMIE LEE LYONS and other employees as to the true nature and risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

47.     Defendants, their ALTERNATE ENTITIES, and each of them, willfully failed

and omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiff's injuries, as required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California. Plaintiff JIMMIE LEE LYONS was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

48.    Defendants, their ALTERNATE ENTITIES, and each of them, having such aforementioned knowledge, and the duty to inform Plaintiff JIMMIE LEE LYONS about the true facts, and knowing the Plaintiff JIMMIE LEE LYONS did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Plaintiff JIMMIE LEE LYONS to remain unaware of the true facts and to induce Plaintiff JIMMIE LEE LYONS to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the <u>Civil Code of the State of California</u>.

49.    As a direct and proximate result of such intentional conduct by Defendants, their ALTERNATE ENTITIES and each of them, Plaintiff JIMMIE LEE LYONS sustained the injuries and damages alleged herein.   The herein-described conduct of said Defendants, their ALTERNATE ENTITIES, and each of them was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons".   Plaintiff, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiff prays for judgment against Defendants, their ALTERNATE ENTITIES, and each of them, as is hereinafter set forth.

# PRAYER

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

1.    For Plaintiff's general damages in an amount that is yet to be

ascertained, but is in excess of $75,000;

2.     For Plaintiff's loss of income, wages and earning potential in an amount that is yet to be ascertained;

3.     For Plaintiff's medical and related expenses in an amount that is yet to be ascertained;

4.     For Plaintiff's loss of household services in an amount that is yet to be ascertained;

5.     For Plaintiff's costs of suit herein;

6.     For exemplary or punitive damages according to proof against all defendants.

7.     For damages for fraud according to proof; and

8.     For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated:   July 24, 2017                          WATERS, KRAUS & PAUL

                              By:___*/s/ Andrew Seitz*_____
                                  KEVIN M. LOEW, ESQ.
                                  ANDREW SEITZ, ESQ.
                                  Attorneys for Plaintiff

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues of this cause.

Dated: July 24, 2017.                    WATERS, KRAUS & PAUL

                                  By:_____/s/ Andrew Seitz_____
                                      KEVIN M. LOEW, ESQ.
                                      ANDREW SEITZ, ESQ.
                                      Attorneys for Plaintiff

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

EXHIBIT A

<u>Plaintiff</u>:   JIMMIE LEE LYONS

<u>Plaintiff's injuries</u>:   Plaintiff was diagnosed with epithelioid malignant mesothelioma on or about January 10, 2017.

<u>Retirement Status</u>:   Plaintiff was retired at the time of his diagnosis.

The statute of limitations has not expired as defined in California Code of Civil Procedure § 340.2.

| Employer | Location of Exposure | Job Title | Exposure Date(s) |
|---|---|---|---|
| U.S. Navy | USS Bairoko<br><br>USS Oriskany<br><br>Hunters Point Naval Shipyard, San Francisco, California<br><br>San Diego Naval Shipyard, San Diego, California<br><br>Long Beach Naval Shipyard, Long Beach, California | Machinist Mate | Approximately 1952 to 1956 |
| San Diego Gas & Electric | San Diego, California | Turbine generator operator | Approximately 1956 to 1957 |
| Westinghouse | National Reactor Testing Station | Quality Control Inspector | Approximately 1957 to 1962 |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY

|  |  |  |  |
|---|---|---|---|
|  | Idaho Falls, Idaho |  |  |
| Aerojet General | Las Vegas, Nevada | Quality control inspector | Approximately 1964 to 1968 |
| N/A | Personal residences<br><br>Las Vegas, Nevada<br><br>Phoenix, Arizona<br><br>De Queen, Arkansas | Home repair and maintenance | Approximately 1968 to 2000 |
| Heers Construction | Las Vegas, Nevada | Carpenter; superintendant | Approximately 1968 to 1970 and 1973 to 1974 |
| A-to-Z Household Maintenance | Las Vegas, Nevada | Owner | Approximately 1968 to 1974 |
| Caesar's Palace | Las Vegas, Nevada | Maintenance Crew; Assistant Chief Engineer | Approximately 1974 to 1996 |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/PRODUCTS LIABILITY